May it please the Court, Your Honor. My name is Andrew Hoyle with the Lavera Law Firm. We represent the Daniel family. If I may, I'd like to reserve about four minutes for rebuttal. During most of human history, it is unfortunate that it was not uncommon for women to bleed to death after childbirth. But by March 9, 2014, with the advances of modern science and modern healthcare, this is something that should never, ever happen. When it does happen, the healthcare providers involved can be called to account for their actions or inactions in medical malpractice cases. Let's get straight to the point. I hated the Ferry's Doctrine when I was enforcing it as a federal U.S. attorney. It makes no sense to me. I agree entirely with what the late But how do we get around? The Supreme Court has never reversed Ferry's. They continue to support it. And on top of that, our Atkinson decision, where a panel of our court first said we're going to carve an exception to Ferry's. And then the Supreme Court came down with embracing all three factors kind of test, and they granted a rehearing. Wouldn't we be required to either reverse the U.S. Supreme Court, which we clearly cannot do, or to reverse an extant decision of a panel of this court, which we're not allowed to do? Your Honor, I'm fully aware of the constraints this court is under, and especially a three It's an argument that has not been made, as far as I can tell, in any of the published decisions. Which is? It's the argument involving the change of the course of analysis involving the parallel private liability argument. And if I may, and I have to address this in the brief, but I want to go through that. In the Ferry's Doctrine, Ferry's originally made the decision that it hinged on an interpretation of parallel private liability. What the court said was, if there was no governmental liability in a particular situation beforehand, then there was no cause of action, and therefore the FTCA did not create a new cause of action. And if you look at page 141 and 142 of Ferry's, you'll see where they lay that out in about eight or nine sentences. Is the decision you're describing pre or post Johnson? Pre. Wasn't Johnson changed the analysis? I don't think so. Because one is, Johnson simply said those rationales still apply, the three rationales that people were talking about. Actually, it was military discipline, which had not been one of the earlier rationales in Ferry's. Johnson, and this is what I want to get to, Johnson did not address medical malpractice. And in fact, the Supreme Court has never addressed medical malpractice since the original Ferry's decision, which involved the companion cases of Griggs and Jefferson that did involve malpractice. But Atkinson did. Atkinson did. Counsel, my problem with your argument, I just want to give you a chance to respond to this. Ordinarily, we're bound by a holding of our court, regardless of the reasoning, whether there's no reasoning, good reasoning, bad reasoning, or incomplete reasoning. So to say, well, this part of the opinion left out a step, or I can think of another argument that wasn't reached, or the rationale doesn't apply, to me is not helpful when we have Atkinson on the books that applies Ferris to the medical malpractice context. Your Honor, I understand that. I have looked at the law of the circuit cases. I'm aware of what the holdings are. And that is the argument that we're coming with. But we would also suggest this Court's never addressed Ferris in an en banc proceeding. And to be quite honest, we're asking the Court, even if the Court feels constrained by its own law of the circuit and constrained by Atkinson's move, nevertheless, the Court may indicate either to the, however that works in terms of the Court communications, the opinion, that this isn't an issue which can and should be addressed. So really you're viewing us as a way station. You want us to send it to the en banc court to redo, or to the Supreme Court to redo? I would not put it that way. But I had to come through. I had to take all the train stops on the way to where I'm going. But I think that this Court can address this issue, even if it ultimately feels that it's constrained not to go that route. Let me be sure I understand, too, that you are not arguing that the Ferris doctrine doesn't otherwise apply. That is, the decedent was an active duty service member at the time of her death and she was treated at a military hospital. So if the, I mean, the factual underpinning is there. Do you agree with that? I, I, I want to say that Ferris should be narrowed and that this Ninth Circuit has the power to change. But you're not arguing that she wasn't an active duty service member or that there was somehow a private hospital involved or anything like that? Right. She was, I'm not contesting that she was on active duty. She also was not engaged in any duty at the time. She was simply a patient at the military hospital. But she was a patient at the military hospital. That's true in the case of anybody that's in a, the victim of medical malpractice in a military hospital. At that moment, they're not performing any other military duty. They're a victim of medical malpractice in the hospital. Your Honor, that is why we're asking the Court eventually to change at least that aspect of Ferris in terms of the interpretation. And what I'm suggesting in terms of what the Supreme Court has done is that the Supreme Court originally said, we don't allow this because there are no suits against, you know, we don't have suits against the military. That's a new cause of action. They followed it up with the Della Height case, and that's 1953. And I'm not sure it's in the brief, but that said, firefighters could not be sued at common law. Therefore, you can't bring an FTCA action involving firefighters. And they were very clear about it. They said, and let me just quote this one thing. It said, the FDA did not change the normal rule, FTCA did not change the normal rule that an alleged failure or carelessness of public firemen does not create actionable rights. Our analysis of the question is determined by what was said in Ferris. Ferris had a broader reach. That whole theory in interpreting private parallel liability as involving governmental liability applied across the board, not just to military situations. But then in the Indian towing case, which was a 5-4 decision involving lighthouse owners, operators, who also, there was no cause of action, and the court changed its course. It said, you can bring this action against, under the FTCA, even though you might not be able to sue them at common law. You can bring it now. And the dissent said, what about Ferris? You know, they threw up their, they were very upset about it. And then finally, there was a Rainier case where, in Rainier, which was out of Washington in 1957, it said, you can sue the government for the actions of careless firefighters. Completely reversed the earlier decision in Della Height. What we're suggesting is the court's never decided whether the medical malpractice cases that were at issue in Ferris should be changed because of the sea change in the way of thinking about it. It has never come up. And so we're actually trying to bring that case up because what we get from the government, and they cite a long list of cases on page 8 and 9, and I think they may have left out a couple of them, talking about how the Ninth Circuit doesn't allow these medical malpractice cases. But they all rely not on reasoning, but on the bare fact that Ferris also involved Griggs and Jefferson in medical malpractice. How would you carve out the distinctions? I mean, providing military members medical care in the field, field hospitals, bigger hospitals, that's an integral part of the military function. So are you suggesting that if at what we used to call a MASH hospital that was medical malpractice, Ferris would apply, but not in the more centralized hospital? Thank you. I think that is a question I would like to get to. The Department of Defense itself distinguishes, and let me just as a reference, there is a reference to a study of military hospitals in our complaint. It was done in 2013. They distinguish between combat and non-combat care. I mean, that's the fundamental distinction. Not between military and civilian. They are not going to treat a woman, a service woman who is pregnant any differently than the civilian woman who is pregnant. And in this case, the government hasn't suggested there was a single military consideration that involved in her treatment, which is unlike the MASH kind of situation. Or sometimes the courts, certain courts when I've talked about it, have tried to say, well, what about field hospitals or things like that? That may well be barred. Because if there are military considerations, we're attacking Ferris all out. We're making an overall attack, but that's not what I'm talking about here. There are distinctions which the Department of Defense itself makes, because there has been not only a sea change in terms of the law, but particularly a sea change in terms of the kind of people who are treated in military hospitals. The Military Dependent Care Act wasn't passed until 1956. It was very unclear what kind of rights that dependents had. But what happens now is these are full service hospitals. They are doing all the work of any other kind of hospital. And that makes a difference in how you would treat these cases. I would also point out that among the 14 exceptions to the FTCA waiver, you have a, it doesn't apply outside the United States. So if somebody is, you know, injured in Iraq, flown to Germany for treatment or whatever, it's not going to apply, period. Also, it doesn't apply to injuries occurring out of combatant operations. So you have those kinds of situations as well. You're not going to get, and, you know, frankly, I think that the military would have a good argument in the terms of, sense of, if you do have some sort of situation where you do have a military consideration that may override, there isn't anything like that in most cases. And that can be handled. It's not a, you know, you should not be throwing out all of these cases because you're going to occasionally have the case where there might be a military consideration that affects the treatment. You're down to about three minutes and change if you wanted to say. Good morning, may it please the court. I'm Lowell Sturgill from the Department of Justice representing the United States. Lieutenant Daniels served her country honorably and well and her passing is a tragic loss for her family, her friends, and for the Navy. Nevertheless, for the reasons the district court gave, this FTCA case is clearly barred by the Ferris Doctrine. The court's most recent medical malpractice case is the Witt case decided in 2011 and the court in Witt put it this way, we've consistently held that claims for medical malpractice in military facilities are barred by Ferris. And there's a list of other cases that came before Witt that say the same thing. This morning, counsel says that you should ignore that because one of the bases for affairs has allegedly been eroded. That is the private parallel person analogy. That is actually not a new point. Justice Scalia made the same argument in his Johnson dissent and did not move the majority. So it is, in fact, not a new argument and not a ground that you can ignore not only the cert cases but also, of course, Ferris itself, which involved three consolidated cases, two of which were medical malpractice cases. And in the McAllister case from this court, this court said that the fact that Ferris itself involved two medical malpractice cases was sufficient without more to reach the conclusion that Ferris does bar those kinds of cases. Atkinson, of course, also confirms this and was a prenatal care case. So it is also very close to the facts of this case. And in the Sonnenberg case, this court confirmed that the best way to apply the Ferris doctrine is by comparing fact patterns from the cases and trying to find the most factually analogous cases. So clearly Atkinson and Witt are the same. Finally, I would suggest that people in the situation of service members who suffer medical malpractice and their families are not left without a remedy. The remedies here to which Lieutenant Daniel's survivors are entitled are set out in the Molinaro Declaration in the supplemental excerpts of record. And just to briefly identify those, she was entitled to a $100,000 death gratuity. Her children and husband get a dependency and indemnity compensation. Monthly payment is substantial. Children get free health care and military facilities up to age 21 plus medical benefits. And these kinds of benefits are provided without fault. They're provided quickly. And if you look at the supplemental excerpts of record at page 101 documents, when these benefits were paid and made available, and they were made available quickly and without the necessity of having to prove fault, which of course a civilian who's injured in a military hospital has to prove in order to get anything. I believe that that about covers what I would want to say this morning. If the court has any questions, I'd be happy to answer them. I don't believe that we do. Thank you. Thank you. Your Honor, if I may just briefly address Johnson. The issue in Johnson, the significant issue in Johnson was, does FARIS apply if the persons who are committing the negligent acts are not in the military? And because it was an FAA controller. But what happened in the facts and what was determinative of the majority opinion other than it did affirm FARIS overall. It did not go into any of the issues that I've raised, but it did affirm FARIS overall. But what you had was a situation which it was unquestionably, it was a pilot whose helicopter crashed during a sea rescue. And that was his job. And he was doing his job not going to get into specific military issues. And that is what I think drives that case. But the particular case, what Justice Scalia was doing, he went over the whole history, but he was, you know, he noted the kind of argument that I'm making, but he wasn't making that argument. He was just saying this should not be extended further. But the argument wasn't, this was not something that was pressed there. And I don't think that the Supreme Court has still had the opportunity to say, given what we've done, does this really apply to, does FARIS really apply to medical malpractice cases where there are no military considerations whatsoever, where physicians and healthcare providers are, for that matter, subject to suit, depending upon who their patient is. And in terms of, you know, I know it's a difference when it's a service member, but remember, the suits brought by civilians, they're suits from family members. So if you're a service member and your child has a knee infection and goes to the hospital and unfortunately they fail to prescribe the proper antibiotic and the child's legs amputated. What about your opponent's point on factor two, the availability of alternative compensation systems? Well, in the cases that this Court has ruled that there is a recovery like, and Schoenfeld is the one I'm thinking of, is the guardrail case. They were, the Court allowed the pursuit of the claim, yet the person got a benefit. There has not been any case that said this is controlling. And in fact, this Court has, subsequent to Johnson, has said the third factor, military discipline, is still the most important. Only in Atkinson 2 has the Court said there's no military discipline, but we're going to say, well, okay, it's the benefits and it's the unique federal relationship. But that is not, I don't think that that's sufficient. Any collateral source like that can be taken care of after you determine the verdict, because what the damages are going to vary from case to case. We have a little girl who lost her mother, has never known her. That's not something that's really reflected in that reward they've got. This is something that we want to look at. And sometimes those benefits may be sufficient. Sometimes they may not be. We have cases involving, you know, the so-called genesis rule, where you have babies that are profoundly injured and, you know, there is, you know, that calls for a compensation from a court, not from an insurance policy. Thank you, counsel. You've exceeded your time. Thank you very much. And we understand your position, I think. Thank you very much. We appreciate the helpful arguments from both counsel and the cases submitted.
judges: Hawkins, Graber, Teilborg